UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

JUL 0 5 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )
INFORMATION, CELL SITE )
INFORMATION, AND OTHER )
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 299-3153. )

No. 4:18MJ05189 NAB

**FILED UNDER SEAL**

## APPLICATION

COMES NOW the United States of America, by and through its attorneys, Jeffrey B.

Jensen, United States Attorney for the Eastern District of Missouri, and Erin O. Granger, Assistant

United States Attorney for said District, and hereby makes application to this Court for a warrant

and order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) and 3123, authorizing

agents/officers of the FEDERAL BUREAU OF INVESTIGATION (FBI) (hereinafter referred to

as "investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies,

to obtain records and location information, including precision location information, cell site

location information, and other signaling information, associated with the following cellular

telephone, which is further identified as follows:

**TELEPHONE NO.:** (314) 299-3153

**ESN/IMSI NO.:** #unknown

**SUBSCRIBER:** "William none Smith"

**ADDRESS:** "none"

(hereinafter the **"subject cellular telephone"**).

## I.     Introduction & Relief Requested

1.     The undersigned applicant for the Government is an Assistant United States Attorney in the Office of the United States Attorney for the Eastern District of Missouri, and an "attorney for the Government," as defined in Fed. R. Crim. P. 1(b)(1)(B).   Therefore, pursuant to Title 18, United States Code, Sections 2703(c) and 3122(a)(1), the undersigned may apply for an Order authorizing the disclosure of the telecommunication records and information requested herein.

2.     The **subject cellular telephone** is serviced by T-MOBILE (hereinafter referred to as "the Service Provider").   The records and information requested herein are directed at location-related information and subscriber information associated with the **subject cellular telephone**, and may include information related to when the **subject cellular telephone** is located in a protected space, such as a residence.   This application does not seek to compel or acquire the disclosure of the content of any communications.

3.     The **subject cellular telephone** is currently being used in connection with violations of Title 21, United States Code, Sections 846 and 841(a)(1) (hereinafter referred to as "the subject offenses"), as well as possible violation of Title 18, United States Code, Section 1073, by Darryl BLACK, who is charged with conspiracy to distribute heroin, in United States v. Ramos-Estrada, et al., Cause No. 4:17CR00172 RLW (NCC), and whose whereabouts are currently unknown.

4.     The Government makes this application upon a showing of probable cause. Attached to this application and incorporated by reference as if fully set out herein is the affidavit of FBI Special Agent Joel Bingaman which alleges facts in order to show that there is probable

2

cause to believe that evidence of the commission of the above-described subject offenses, as well as the location and arrest of Darryl BLACK can be obtained by locating and monitoring the location of the **subject cellular telephone**, without geographic limitation within the United States, including by obtaining precision location information (e.g., GPS information), cell site information, signaling information, and records concerning the **subject cellular telephone** for a period of forty-five (45) days measured from the date the Warrant is issued -- *i.e.*, from July 5, 2018, to August 18, 2018, 11:59 p.m. (CT).

5.    The present application requests relief in three forms.    First, the application requests relief in the form of precision location information, including GPS information, associated with the **subject cellular telephone**.    Second, the application requests subscriber records and cell site information, which does not include precision location information, associated with the **subject cellular telephone**. Third, the application requests authorization for the installation and use of pen register and trap-and-trace devices.

## II.    Precision Location Information Request

1.    The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System (GPS) information, but not the contents of any communications, associated with the **subject cellular telephone**, for a period of forty-five (45) days from the date of any warrant issued hereon -- *i.e.*, from July 5, 2018, to August 18, 2018, 11:59 p.m. (CT).

3

2.     The Service Provider is a service provider within the meaning of Title 18, United

States Code, Section 2510(15), and as such, is subject to Title 18, United States Code,

Section 2703(c)(1)(A) which states:

> (c)     Records concerning electronic communication service or
> remote computing service.--(1) A governmental entity may require
> a provider of electronic communication service or remote
> computing service to disclose a record of other information
> pertaining to a subscriber to or customer of such service (not
> including the contents of communications) only when the
> governmental entity--
>
> (A)     obtains a warrant issued using the procedures
> described in the Federal Rules of Criminal Procedure...by a court of
> competent jurisdiction....

3.     The Court has jurisdiction to issue a warrant for the disclosure of precision location

information, as requested herein, because it is "a court of competent jurisdiction," as defined in

Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c).     Specifically, the Court

has jurisdiction over the offense being investigated.

4.     Title 18, United States Code, Section 2703(g) provides that an officer is not

required to be present for the service or execution of a warrant issued under Section 2703.     In

particular, Section 2703(g) states:

> Notwithstanding section 3105 of this title, the presence of an officer
> shall not be required for service or execution of a search warrant
> issued in accordance with this chapter requiring disclosure by a
> provider of electronic communications service or remote computing
> service of the contents of communications or records or other
> information pertaining to a subscriber or customer of such service.

5.     Title 18, United States Code, Section 2703(c)(3) permits the government to obtain

the requested information and records without providing notice to any subscriber or customer.     In

4

particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

### III.   Cell Site Location Information Request

1.     The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to provide certain telecommunication records and information, including cell site location information, but not the contents of any communication, for the time period of thirty (30) days prior to the warrant and for forty-five (45) days from the date of the requested warrant -- *i.e.*, from July 5, 2018, to August 18, 2018, 11:59 p.m. (CT).   In particular, the Government requests the following telecommunication records and information:

(1)     subscriber information and all telephone numbers, ESN, MIN, IMEI, MSID or IMSI numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

(2)     subscriber information available for any originating telephone number;

(3)     Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls at the **subject cellular telephone**) for the above-specified time period;

(4)     cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)     call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)     cell site activation information, including information identifying the antenna tower receiving transmissions from the **subject cellular telephone** number, and any information on what portion of that tower is receiving a transmission from the **subject cellular telephone** number, at the beginning and end of a particular telephone call made to or received by the **subject cellular telephone** number;

(c)     numbers dialed;

(d)     call duration;

(e)     incoming numbers if identified;

(f)     signaling information pertaining to that number;

(g)     a listing of all control channels and their corresponding cell sites;

(h)     an engineering map showing all cell site tower locations, sectors and orientations; and

(i)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the **subject cellular telephone**.

(j)     historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD) and

6

(k)     Internet Protocol (IP addresses) utilized by and signaled to

and from the **subject cellular telephone**.

2.     The Service Provider is a service provider within the meaning of Title 18, United

States Code, Section 2510(15), and as such, is subject to Title 18, United States Code,

Section 2703(c)(1)(A) which states:

> (c)     Records concerning electronic communication service or
> remote computing service.--(1) A governmental entity may require
> a provider of electronic communication service or remote
> computing service to disclose a record of other information
> pertaining to a subscriber to or customer of such service (not
> including the contents of communications) only when the
> governmental entity--
>
> (A)     obtains a warrant issued using the procedures
> described in the Federal Rules of Criminal Procedure...by a court of
> competent jurisdiction....

3.     The Court has jurisdiction to issue a warrant for the disclosure of requested

telecommunications records, including cell site records because it is "a court of competent

jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and

(c).     Specifically, the Court has jurisdiction over the offense being investigated.

4.     Title 18, United States Code, Section 2703(g) provides that an officer is not

required to be present for the service or execution of a warrant issued under Section 2703.   In

particular, Section 2703(g) states:

> Notwithstanding section 3105 of this title, the presence of an officer
> shall not be required for service or execution of a search warrant
> issued in accordance with this chapter requiring disclosure by a
> provider of electronic communications service or remote computing
> service of the contents of communications or records or other
> information pertaining to a subscriber or customer of such service.

5.     Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer.     In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

## IV.     Pen Register, Trap-and-Trace Request

1.     The Government's application seeks an Order, pursuant to Title 18, United States Code, Section 3122, authorizing the installation and use of pen register and trap-and-trace devices, including enhanced caller identification, as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, and including an Order authorizing the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information transmitted by the **subject cellular telephone** number further identified herein, and a trap-and-trace device, including enhanced caller identification, which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **subject cellular telephone** number, direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, for the time period from July 5, 2018, to August 18, 2018, 11:59 p.m. (CT).

2.     In making this application, the Government does not seek the contents of any communication, such that other legal process would be required.

8

3.      As previously outlined, the Government certifies that the information likely to be obtained through the aforesaid pen register and trap-and-trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

4.      The Government further requests that the Order direct the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, here incorporated by reference, and any other applicable service providers, to initiate caller identification on the subject cellular telephone number listed above, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers.

5.      The Government further requests that the Order direct the furnishing of information, facilities, and technical assistance, as necessary, to unobtrusively accomplish the installation and use of the pen register and trap-and-trace devices, including enhanced caller identification, by the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications and any other applicable service providers, and with a minimum of disruption of normal telephone service.

6.      The Government further requests that the Order direct that the results of the pen register and trap-and-trace devices, including enhanced caller identification, be provided to the agents/officers of the investigative agency(ies) at reasonable intervals for the duration of the Order.

## V.      Changed Numbers, Compensation and Sealing

1.      The Government requests that should the subject cellular telephone and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen

register and trap-and-trace devices remain in effect for any new telephone to which the subject cellular telephone listed above is changed, throughout the effective period of such Order.

2.　　　The Government further requests that the Order direct that the lead investigative agency provide the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

## VI.　　Sealing, Notification and Miscellaneous Considerations

1.　　　Pursuant to Title 18, United States Code, Section 2703, the Government requests that the Court direct that the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the following:

　　　　(1) subscriber information;

　　　　(2) length of service (including start date);

　　　　(3) the types of service utilized;

　　　　(4) instrument number or other subscriber number or identity, including any temporarily assigned network address;

　　　　(5) all available names, addresses, and identifying information, and other subscriber and service feature information;

　　　　(6) toll records including incoming and outgoing telephone numbers;

10

(7) credit information, billing information, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone,

for the telephone numbers being dialed to and from the aforementioned **subject cellular telephone** at reasonable intervals for the past thirty (30) days from the date of this Warrant and at reasonable intervals for up to forty-five (45) days from the date of this Warrant -- *i.e.*, from July 5, 2018, to August 18, 2018, 11:59 p.m. (CT).

2.      Pursuant to Title 18, United States Code, Section 2703(c)(3), the Government entity or agency receiving these records or information as a result of this application and accompanying warrant and order will not provide notice to the subscriber or customer of the **subject cellular telephone**.

3.      This Court has authority under Title 18, U.S.C., Section 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

4.      In this case, such an order is appropriate because the Government seeks the warrant in part under the authority granted to this court pursuant to Title 18, U.S.C., Section 2703. The requested warrant is related to an ongoing criminal investigation that is not public and this portion of the investigation is not known to the subjects of the investigation. Premature notification may alert the subject(s) to the existence of the investigation. If the subjects were notified about the existence of the requested warrant, the subjects could destroy evidence. Accordingly, there is

11

reason to believe that notification of the existence of the warrant will seriously jeopardize the investigation, including giving the subjects an opportunity to: flee, destroy and/or tamper with evidence; change patterns of behavior; or notify confederates. *See* Title 18, U.S.C., Section 2705(b)(2), (3), and (5). Based on the nature and circumstances of the investigation, there is also reason to believe that notification of the existence of the warrant will result in endangering the life or physical safety of an individual, or the intimidation of potential witnesses. *See* Title 18, U.S.C., Section 2705(b)(1) and (4).

     5.     Based on the foregoing, pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2) and 2705(b), the Government requests that the Court direct the Service Provider and the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, not to disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order, to a subscriber or lessee or to any other person, except that the provider may disclose the warrant and any Order to an attorney for the provider for the purpose of receiving legal advice.

     6.     The information requested herein does not require a physical intrusion or physical trespass into any protected space. Accordingly, it is respectively requested that the warrant authorize the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain the location information described herein at any time, day or night.

     7.     The Government further requests that the Order direct that the investigative agency(ies) provide the telecommunication providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service

providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

8.      In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation, including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit of FBI Special Agent Joel Bingaman, which is attached hereto and made a part hereof, applicant requests this Court to issue a Warrant authorizing agents/officers of the FEDERAL BUREAU OF INVESTIGATION (FBI) (the investigative agency(ies)), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information associated with the **subject cellular telephone**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this ___5th___ day of July, 2018.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

ERIN O. GRANGER, #53593MO
Assistant United States Attorney

13

# LIST OF TELECOMMUNICATION SERVICE PROVIDERS

## T-MOBILE

### and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

## ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS
Last Update: 06/21/2018

**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JUL 0 5 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )
INFORMATION, CELL SITE )
INFORMATION, AND OTHER )
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 299-3153. )

No. 4:18MJ05189 NAB

**FILED UNDER SEAL**

## AFFIDAVIT

Joel Bingaman, being duly sworn, deposes and says that he is a Special Agent with the

Federal Bureau of Investigation (FBI), duly appointed according to law and acting as such.

### Introduction

I am presently employed as a Special Agent by the Federal Bureau of Investigation ("FBI"),

and have been so employed since April of 2006. I am currently assigned to the FBI's St. Louis

Division, Safe Streets Gang Task Force (SSGTF). My responsibilities with the SSGTF primarily

include gang and narcotics investigations. I have received training on, and have participated in,

investigations involving possession with the intent to distribute and distribution of controlled

substances, and conspiracies associated with the foregoing criminal offenses which are prohibited

by Title 21, United States Code, Sections 841 and 846. Through the course of conducting these

investigations, I have been involved in the use of the following techniques: questioning of

witnesses; interviewing confidential human sources; conducting physical surveillance; conducting

undercover drug operations in which drugs are purchased from persons through the use of

confidential human sources and/or undercover employees; consensual and court authorized monitoring and recording of telephonic communications; analyzing telephone pen registers and caller identification system data; analyzing data from mobile telephones; and executing search warrants and arrest warrants.   I have participated in numerous drug investigations which have resulted in the seizure of cocaine, cocaine base, marijuana, heroin, methamphetamine and firearms.

I have also participated in numerous investigations involving money laundering and I am familiar with and have received training regarding the techniques employed by criminals to hide the proceeds derived from their illegal activities from detection by law enforcement.   Throughout the course of my career I have led and participated in numerous investigations to locate and apprehend fugitives from federal and state prosecutions to include fugitives that are charged with violations of Title 18, United States Code, Section 1073, unlawful flight to avoid prosecution. The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses.   As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the cellular telephone bearing number **(314) 299-3153** (hereinafter the "**subject cellular telephone**"), which is being serviced by T-MOBILE (hereinafter referred to as "the Service Provider"), has been used, and is presently being used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (hereinafter referred to as "the subject offenses"), by Darryl BLACK, and others known and

2

unknown.    Darryl BLACK, whose whereabouts are currently unknown, is charged with conspiracy to distribute heroin in violation of said subject offenses, in United States v. Ramos-Estrada, et al., Case No. 4:17CR00172 RLW (NCC).

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to the location and arrest of Darryl BLACK.

**Investigation and Probable Cause**

The investigative team is currently participating in an investigation regarding the illegal importation and distribution of heroin by numerous individuals to the St. Louis area.   One of the principal parties is Darryl BLACK (BLACK).   The investigation into the organization, which for the purpose of this Affidavit shall be referred to as BLACK Criminal Enterprise, was initiated in 2016 by members of the FBI in St. Louis, Missouri.

On July 21, 2016, the Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, authorized the interception of wire communications to and from BLACK's cellular telephone 314-620-4609.   Agents monitored this phone until August 20, 2016.   On September 19, 2016, the Honorable Carol E. Jackson, United States District Judge for the Eastern

3

District of Missouri, authorized the renewed interception of wire communications to and from BLACK's cellular telephone 314-620-4609.   Judge Jackson also authorized the initial interception of wire communications to and from BLACK'S other cellular telephone, 314-495-4011.   Agents monitored both devices until October 18, 2016.

During the course of the investigation, investigators determined that BLACK was purchasing bulk quantities of heroin in Arizona and mailing it back to St. Louis, where he and his associates would distribute it.   On October 7, 2016, United States Postal Service (USPS) identified three packages originating from Phoenix and destined to various addresses in St. Louis, Missouri. Video surveillance captured Daviyon THOMAS mailing these packages from a United States Post Office. Investigators obtained search warrants for all three packages. One package contained 1 kilogram of heroin. The second package contained 1.9 kilograms of heroin. The third package contained 1.9 kilograms of heroin.   In total, investigators seized 4.8 kilograms of heroin associated with the BLACK Criminal Enterprise.

On April 19, 2017, BLACK was indicted by the federal grand jury in the Eastern District of Missouri for conspiracy to distribute heroin.   (United States v. Ramos-Estrada, et al., Case No. 4:17CR00172 RLW (NCC).)   That same day, the federal grand jury in the Eastern District of Missouri returned an indictment charging ten other defendants of the BLACK Criminal Enterprise with drug distribution and conspiracy to distribute drugs.   That same day, an arrest warrant was issued as to BLACK.

On May 17, 2017, investigators conducted an initial "round up" of individuals charged in the indictment and simultaneously executed multiple search warrants, including search warrants

4

on properties utilized by BLACK.    Investigators were unable to locate BLACK or arrest him during this initial round up.    To date, BLACK remains a fugitive.

One of the co-defendants in the April 2017 indictment, Gregory HAMPTON (HAMPTON), was apprehended near Atlanta, Georgia, on May 17, 2017 following a vehicle pursuit that began when investigators approached a residence where HAMPTON was believed to be located.    Investigators took HAMPTON into custody after a vehicle HAMPTON was a passenger in crashed and/or became disabled trying to cross or drive along train tracks.    The vehicle HAMPTON was in immediately prior to his arrest was a dually pickup truck owned and/or associated to BLACK. Investigators now have information that BLACK was also in the Atlanta area with Travis ROBERTS, another defendant charged in the April 2017 indictment.    It is not known if HAMPTON travelled to Atlanta with BLACK and ROBERTS.    BLACK and ROBERTS avoided apprehension during the initial round up in May 2017 but ROBERTS has since been located and arrested.

Investigators believe that BLACK fled the Eastern District of Missouri after the initial round up but as set forth below, investigators believe that he is or has been within this judicial district from time to time since he absconded.

Most of the defendants charged in the April 2017 indictment were arrested in May of 2017 during a large scale "roundup" or in the following weeks.    Through interviews of cooperating defendants in this indictment as well as another individual charged in a separate indictment, investigators concluded that BLACK is fully aware of his indictment and active arrest warrant and is taking conscientious steps to avoid being captured.    Several cooperating defendants believe that BLACK is, or at least was, hiding in Arizona where he maintained some contacts from a

5

previous marijuana importation and distribution criminal enterprise.   Furthermore, cooperating defendants that are in custody and/or out on bond have reported that they have heard from their family and/or associates that BLACK has been seen in various locations around St. Louis at various times in the past six months.   One such spotting occurred within the last forty-five to sixty days near downtown St. Louis.   To date, attempts to locate BLACK, in and out of Missouri, have not been successful.

Several cooperating defendants provided specific information that BLACK continued to import heroin from Arizona after investigators seized the 4.8 kilograms of heroin that BLACK arranged to be sent through USPS in October 2016.   After the USPS seizure of heroin, BLACK arranged with the Arizona heroin supplier to transport the heroin to St. Louis using vehicles with hidden compartments.   One such courier was intercepted by the Kansas Highway Patrol returning to Arizona with approximately $215,000 in United States currency that was secreted in a hidden compartment.   The courier provided a St. Louis address associated with BLACK where the courier had delivered heroin and received the cash payment for transport back to Arizona.

Additionally, a cooperating defendant advised that BLACK had progressed to distributing heroin on a wholesale level after it arrived to St. Louis.   Investigators know this to mean that BLACK was selling the heroin in large quantities instead of breaking it down and distributing it at street level quantities.   While this typically results in less profit, it also reduces exposure to law enforcement and can be done with significantly less resources.   BLACK's continued importation and distribution of heroin after such a significant law enforcement action demonstrates his continued need, and resolve, to commit the subject offenses.

6

During the extensive investigation of BLACK and his criminal activities, investigators did not know BLACK to have a legitimate job or other legitimate source of income.    The only income that investigators were able to identify that would support BLACK'S continual purchase of vehicles and out of state trips, where BLACK routinely flew first class, was income from distributing narcotics.    Your affiant believes that BLACK would need to continue distributing heroin or other illegal narcotics to sustain himself while on the run from law enforcement, particularly because the associates that would be likely to provide him with money and assistance were also arrested and many are currently in custody.    Your affiant further believes that BLACK would not be able successfully distribute heroin or other illegal narcotics without the use of a mobile telephone.

A.    BLACK'S USE OF THE SUBJECT CELLULAR TELEPHONE

Cellular telephone bearing number **(314) 299-3153** (the **subject cellular telephone**), believed to be utilized by BLACK, was identified through analysis of historical toll and subscriber records obtained via administrative subpoena and other court authorized processes such as pen register / trap and trace and Title III wire interceptions.    From March 10, 2015 to around October 13, 2016, BLACK utilized phone number 314-620-4609.    From October 5, 2015 to around October 13, 2016, BLACK utilized phone number 314-495-4011.    When law enforcement seized multiple kilograms of heroin from BLACK and his associates and executed multiple search warrants after controlled deliveries, BLACK stopped utilizing both 314-620-4609 and 314-495-4011.

Information gathered from both of BLACK's previous telephones, 314-620-4609 and 314-495-4011, which was investigated thoroughly via toll analysis and monitored via court authorized

7

wire interception for significant periods of time, was used to establish a pattern of people and telephone numbers that BLACK had frequent and/or consistent telephone contact with. Investigators then used current toll and subscriber records of BLACK's family and associates to identify any telephone numbers which had a similar contact pattern to contact BLACK's associates and family members. Investigators believed that in order to correctly identify BLACK's current replacement telephone, the telephone number would likely be in frequent contact with BLACK'S family members and BLACK's past associates, coconspirators and/or drug customers. Additionally, it would be likely that BLACK's past associates, coconspirators and/or drug customers would have no, or very limited, contact with BLACK's family members with the exception of one of BLACK's sisters that had a known connection to a few associates and coconspirators. From toll records and other investigative measures, investigators have determined that BLACK's sister is not the user of the **subject cellular telephone**.

Investigators also knew that BLACK's call pattern could be significantly different due to the following: 1) the arrest of numerous of BLACK's coconspirators and subsequent seizures of their telephones upon arrest 2) the expectation that numerous other known and unknown associates, coconspirators and/or drug customers whom were not arrested would change their telephone numbers after the takedown and 3) BLACK's efforts to limit his exposure to law enforcement capture.

BLACK's call pattern would likely be altered in several ways. Primarily, investigators believe that BLACK would likely be making fewer calls to fewer people and those people would likely have new telephone numbers unknown to investigators. Additionally, when BLACK altered his distribution method to a wholesale approach he would likely be distributing to different

coconspirators, likely unknown to investigators. These coconspirators would be different than the street level dealers he was previously having telephone contact with because the street level dealers were either arrested and/or did not fit BLACK's new distribution approach. Despite this, as shown in more detail below, this investigative method allowed investigators to identify the **subject cellular telephone** as BLACK's likely "replacement" telephone for phones 314-620-4609 and 314-495-4011.

The **subject cellular telephone** is in frequent contact with telephone numbers utilized by several members of BLACK's family. Specifically, BLACK's sister, Alphosia BLACK, utilizes phone number 310-730-9134. His sister, Chelsea BLACK, utilizes phone number 314-619-6345. His grandfather, Clarence BUTLER, utilizes phone number 314-249-3824. His mother, Caralotta BLACK, utilizes phone number 314-546-6183. The **subject cellular telephone** has had contact with all of these numbers.

As outlined below, from May 18, 2018 to June 18, 2018, the **subject cellular telephone** has had contact with the following known telephone numbers and/or known individuals utilizing the following telephone numbers:

The **subject cellular telephone** has had three contacts with 314-575-6542, which is subscribed to by Visions Home Health Care which is owned by Anna and Mark BONDS. The most recent contact occurred on May 31, 2018. During the investigation, investigators observed Mark BONDS (BONDS) with BLACK and cooperating defendants described BONDS as a good friend of BLACK's. During court authorized wire interception of both of BLACK's previously known telephones, BONDS was frequently intercepted utilizing other telephone numbers. Cooperating defendants advised investigators that BLACK and BONDS were close friends.

9

Investigators were not able to identify any telephone contact between 314-575-6542 and BLACK's family members indicating that the **subject cellular telephone** is being used by BLACK and not one of BLACK's family members. 314-575-6542 also had contact with BLACK's previous telephone 314-620-4609.

The **subject cellular telephone** has had eleven contacts with 314-874-5724, a telephone number which is utilized by Grace SHUMPERT (SHUMPERT). The most recent contact occurred on June 16, 2018. SHUMPERT is associated with one of BLACK's co-defendants, Jermaine JOHNSON (JOHNSON). SHUMPERT is/was the registered owner of a blue Nissan Xterra that investigators observed JOHNSON utilizing to conduct drug transactions. The Xterra was registered to 4854 Pineneedle Trail, Florissant, Missouri, an address where SHUMPERT was observed on at least one occasion by investigators departing from. Investigators also knew JOHSNON to reside at Pineneedle Trail on at least a part time basis. During the roundup, investigators attempted to locate and arrest JOHNSON at 4854 Pineneedle Trail but he was not there. Investigators noted that several photographs of JOHNSON were on display at the residence. Several codefendants advised that BLACK'S father, Usamah MUJAHID, has a family connection to JOHNSON and was also supplying JOHNSON with heroin. Due to JOHNSON's association with SHUMPERT and the fact that 314-874-5724 did not have contact with BLACK's previous telephones, investigators believe that JOHNSON is utilizing 314-874-5724 to communicate with BLACK and to hide said communications from law enforcement. Investigators were not able to identify any telephone contacts with 314-874-5724 and BLACK's family members.

10

The **subject cellular telephone** has had twelve contacts with 314-435-3361, which is subscribed to by Darrolyn ANDERSON.    The most recent contact occurred on May 22, 2018. Investigators believe that Darrolyn ANDERSON is the mother of Chelsea ANDERSON. Investigators have identified Chelsea ANDERSON as one of BLACK's girlfriends. Investigators were not able to identify any telephone contacts with 314-435-3361 and BLACK'S previous telephones or family members.

The **subject cellular telephone** has had six contacts with 314-665-9117, which is subscribed to by MANE EVENT and utilized by Gerald SHELTON (SHELTON).    The most recent contact occurred on June 5, 2018.    SHELTON is the owner of "Mane Event," a barber and beauty salon where investigators knew BLACK hung out.    Through court-authorized wire interceptions, investigators are aware that SHELTON provided BLACK with a business ID number for a fake vehicle registration.    Investigators were not able to identify any telephone contacts with 314-665-9117 and BLACK's family members.    314-665-9117 also had contact with BLACK's previous telephone number, 314-495-4011.

The **subject cellular telephone** has had three contacts with 314-498-5691, which is utilized by Kelby CUNNINGHAM (CUNNINGHAM).    The most recent contact occurred on May 20, 2018.    CUNNINGHAM is associated with 4944 Ashby Avenue, St. Louis, Missouri, an address which is also associated to Chelsea ANDERSON.    As stated above, Chelsea ANDERSON was a girlfriend of BLACK.    Investigators believe that CUNNINGHAM and Chelsea ANDERSON may be siblings or have another family type relationship.    314-498-5691 also had contact with BLACK's previous telephone 314-495-4011, as well as CHELSEA and CARALOTTA's telephone numbers.

11

The **subject cellular telephone** has had six contacts with 602-703-8229, which is subscribed to by Roberto HERNANDEZ at 7755 W. Clarendon Avenue, Phoenix, Arizona. The most recent contact occurred on June 18, 2018. Investigators believe that 602-703-8229 is a new telephone number being utilized by Roberto QUINTANA (ROBERTO) and/or Gustavo QUINTANA (GUSTAVO), both of which were overheard during court authorized wire interception of BLACK's previous telephones. At the time of the wire interception, GUSTAVO was locked up and was communicating with BLACK via three-way calling through ROBERTO. Investigators believe that GUSTAVO is currently out of jail. Additionally, cooperating defendants have identified GUSTAVO as BLACK'S previous marijuana source of supply and the individual that introduced BLACK to the source of heroin supply in Arizona. Based on open source database information, investigators believe that ROBERTO and GUSTAVO's mother's maiden name is HERNANDEZ. Investigators were also able to determine that 602-703-8229 is linked to a FACEBOOK profile with the user name of JEFE QUINTANA. "Jefe" is generally known to be a Spanish language term for a "boss" or a "person in charge" and is colloquially used to indicate the boss of a drug ring or drug cartel. Because 602-703-8229 is a new telephone number for the one or both of the QUINTANA brothers, it did not have contact with BLACK's previous telephones even though the QUINTANA brother's previous telephone numbers did. Investigators were not able to identify any telephone contacts with 602-703-8229 and BLACK's family members.

The **subject cellular telephone** has been in contact with 314-323-6374 on June 8, 2018. This number is subscribed to by Breiana BROYLES. Breiana BROYLES is married to Larry WILLIAMS (WILLIAMS). Investigators previously intercepted WILLIAMS on BLACK's

12

previous telephones. Additionally, investigators learned from a May 2016 FACEBOOK post on WILLAMS' public FACEBOOK profile that BLACK was the best man at WILLIAMS' and BROYLES' wedding. Investigators were not able to identify any telephone contacts with 314-323-6374 and BLACK's family members with the exception of Chelsea BLACK which has had very limited contact. 314-323-6374 also had contact with BLACK's previous telephone numbers, 314-495-4011 and 314-620-4609.

In addition to what is detailed above, investigators also identified at least eleven other telephone numbers that had contact with the **subject cellular telephone** between May 18, 2018 to June 18, 2018, and BLACK's previous known telephones (314-495-4011 and 314-620-4609) from March 10, 2015 to approximately October 13, 2016. This further indicates that BLACK is utilizing the **subject cellular telephone** as it is very unlikely that another person would have contact with so many of the same telephones over the time span of almost three years.

Additionally, toll analysis of the **subject cellular telephone** has revealed that it has had contact with telephone numbers utilizing prefixes located in Georgia, Nevada, Illinois, California, Arizona, New York, Missouri and Arkansas. While it is true that more people are keeping an existing mobile phone number if they move to another state, this pattern appears to be more consistent with an individual that is on the run and is frequently changing locations in order to avoid capture. Furthermore, for the most part, these prefix areas are areas that BLACK is known to frequent and or have telephone contact with.

Additionally, the subscriber information for the **subject cellular telephone** is simply listed as "William none Smith" and the billing address is listed as "none." It is well known that drug dealers and fugitives that are trying to limit their exposure to law enforcement detection will use

13

limited or fictitious information to evade law enforcement detection. William Smith, or Bill Smith is an extremely common name and it would be impossible without further identifying information to identify and locate a William Smith utilizing a prepaid phone. Additionally, by using prepaid phones, drug dealers and fugitives can easily change telephone numbers, and/or purchase and use multiple phones to further avoid detection.

Based upon the collective training and experience of the investigators, and the information contained herein, it is believed that BLACK utilizes the **subject cellular telephone** in furtherance of illegal drug distribution activity and to facilitate his continued unlawful flight to avoid prosecution. The information requested, specifically precision location information, will further the ongoing investigation and significantly assist investigators in BLACK's apprehension.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (the subject offenses), by Darryl BLACK, who is charged in United States v. Ramos-Estrada, et al., Case No. 4:17CR00172 RLW (NCC), and whose whereabouts are currently unknown. It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics, as well as the location and arrest of Darryl BLACK. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

### Investigative Considerations and Techniques

14

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.     Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.    For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.    Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.    Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.     Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators

15

to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.      Wireless providers also maintain business records and subscriber information for particular accounts.   This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and

16

retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.   Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.   In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data.   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers.   Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government.   The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System

17

information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.   Furthermore, the criminal conduct being investigated is not limited to the daytime.   Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.   Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

## Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy, by Darryl BLACK, who is charged with conspiracy to distribute heroin, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), in United States v. Ramos-Estrada, et al., Case No. 4:17CR00172 RLW (NCC), and whose whereabouts are currently unknown.   There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will

lead to the relevant evidence concerning violations of the subject offenses, as well as the location and arrest of Darryl BLACK.

_7 / 5 / 2018_____
DATE

JOEL BINGAMAN
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _5th_ day of July, 2018.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

19

# LIST OF TELECOMMUNICATION SERVICE PROVIDERS

## T-MOBILE

### and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
|   d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications |   Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications |   Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

## ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS

Last Update: 06/21/2018